## CHARLES SCHAETTLE v. ISAAC A. BENEDICT.

The right of stoppage *in transitu* exists, in every case, in favor of an unpaid vendor, who has not waived his privilege, at any time before actual delivery, in case of the insolvency of the vendee actually existing. It is not necessary that insolvency should be evidenced by any overt act intervening between the sale and exercise of the right. 20 Conn. 53. *Rogers* v. *Thomas*, disapproved.

SPECIAL TERM.—This was an action for the recovery of certain personal property, being merchandize, which had been sold by the plaintiff, a merchant in the city of Cincinnati, to

John Johnston, a merchant, residing and doing business in Ripley, Ohio. The sale of the goods took place in September, 1856. The terms of the sale were cash, or, according to the course of business, a note payable at a short date. Neither the cash nor a note had been received, but the plaintiff, expecting payment, sent the goods by a dray to the river to be shipped on a steamboat. After the goods had been taken from the dray and were about being shipped, they were seized by the defendant, under an order of attachment issued by a justice of the peace, in an action brought by Charles Bachman against John Johnston, for a debt due at the time of the sale of the goods. For this debt, a judgment was subsequently rendered, and an order for the sale of the goods issued.

Shortly after the seizure of the goods by the defendant, the plaintiff informed him that the goods had not been paid for, and wanted the defendant to give them up, which he declined to do. The present action by which the plaintiff obtained possession of the goods, was not brought until forty or fifty days afterward, and after a judgment in the action against Johnston, and the issue of an order of sale.

The debtor, Johnston, had been in the habit of dealing both with the plaintiff and Bachman. After he had failed in the payment to Bachman, the fact of such failure was communicated to the plaintiff. But the plaintiff had been informed that the debt had been paid, and did not know to the contrary until after the sale. It appeared that Johnston had contracted other debts, which he had also failed to pay. There was no further proof offered of insolvency; but it appeared that information of the circumstances attending goods was given to Johnston, who took no steps either to relieve them from the seizure or to pay the plaintiff.

*Kebler & Force,* for plaintiff.

*Stallo, Andrews & McCook,* for defendant.

GHOLSON, J. The question presented in this case is whether

the plaintiff, under the circumstances shown by the evidence, could properly exercise the right of *stoppage in transitu.* It has been conceded that this right, if it otherwise existed, was not affected by the seizure of the goods under an order of attachment. Nor is there any difficulty upon the point as to which, in such cases, the difficulty most frequently arises; the right of the plaintiff was undoubtedly asserted before the goods had reached their destination. The transit had, indeed, commenced; but, from the circumstances, it may be inferred, that the process under which it was first arrested, had its commencement at a period fully as early. The only doubt, therefore, as to the right of the plaintiff, depends upon a question and it is the only question which has been presented and argued, as to the insolvency of the vendee. It is claimed for the defendant that the right of *stoppage in transitu* exists only in a case of insolvency on the part of a vendee; that no such insolvency as the law requires is shown by, or can be inferred from, the evidence in this case; that the insolvency which may be inferred existed at the time of the sale; and that, to authorize the *stoppage in transitu,* it must have occurred after the sale, and have been evidenced by some overt act.

The mercantile law appears to be clear and distinct that where goods have been consigned, and are in transit to the vendee, the consigor can not vary the consignment except in the case of insolvency. It has been said, that " the mischief and inconvenience that would ensue on a contrary supposition are extreme. The goods might be put on board, and might lie at the risk of the consignee for two or three months; and if the consignor could come and resume them at pleasure, it would place the consignee in a situation of great disadvantage; that he should be exposed to the risk during such a length of time, for an object which might be eventually defeated, at any moment, by the capricious or interested change of intention in the breast of the consignor. It would be to expose the consignee altogether to the mercy of the seller;" *The Constantia,* 6 Rob. Adm. 321–327. In the language of the same high authority, in that case where a vendor had

stopped and diverted the delivery of goods, if the vendee " had been an insolvent person, it would have amounted to a complete and effective revendication of the goods. But if the person to whom they are consigned is not insolvent; if, from misinformation, or from excess of caution, the vendor has exercised this privilege prematurely, he has assumed a right that did not belong to him, and the consignee will be entitled to the delivery of the goods, with an indemnification for the expenses that may have been incurred." * * " It is not an unlimited power that is vested in the consignor, to vary the consignment at his pleasure in all cases whatever. It is a privilege allowed to the seller, for the particular purpose of protecting him against the insolvency of the consignee. Certainly it is not necessary that the person should be actually insolvent at the time. If the insolvency happens before the arrival, it would be sufficient to justify what has been done, and to entitle the shipper to the benefit of his own provisional caution. But if the person is not insolvent, the ground is not laid on which alone such a privilege is founded;" 6 Rob. Adm. 326.

The exposition of the law on this subject, which has been quoted from the judgment in the case of *The Constantia,* has been several times cited with approbation. In 2 M. & G. 792, 811, *Wilmshurst* v. *Bowker,* which was an action by a vendee against a vendor for improperly stopping the delivery of goods, it was said by Tindal, C. J.: " The ordinary right of countermanding the actual delivery of goods shipped to a consignee, is limited to the cases in which the bankruptcy or insolvency of the consignee has taken place. The law as to this point is very clearly laid down by Lord Stowell, in the case of *The Constantia.*" Certainly it would seem that the principles recognized by Lord Stowell as governing such cases, do not countenance the idea that a vendee, insolvent at the time of the sale of the goods, and still remaining insolvent, could object to their stoppage *in transitu.* The only conceivable case, according to those principles in which such a vendee could complain, would be where his insolvency was

known to the vendor at the time of sale, and the contract was made in view of his condition. The very object of granting the privilege to the vendor is to protect him from the insolvency of the vendee, and the privilege, unless waived by the vendor, must properly extend to cases of insolvency, whether existing at the time of sale, or occurring at any time before the actual delivery of the goods.

A vendee who disputes the right of stoppage *in transitu*, and claims an indemnity for its improper exercise, must be prepared to aver, as in the case of *Wilmshurst* v. *Bowker*, that he was neither bankrupt nor insolvent. Under such a negative averment, independent of any circumstances to the contrary, the vendee might have the benefit of a presumption of ability to comply with his contract, and the burthen of showing insolvency might be cast on the vendor. It may be that this would be sufficiently shown by the proof of an overt act of insolvency, such as a stoppage of payment, though in fact an actual insolvency, in the sense of not having means adequate to the payment of debts might not exist. If the vendee, before the stoppage *in transitu*, had, by his conduct in business, afforded the ordinary apparent evidences of insolvency, he ought not to complain of the precautionary measure taken by the vendor, though it should turn out that he was ultimately able to pay. But though no such evidences of insolvency should precede the stoppage *in transitu*, still, if the fact of insolvency existed, the vendee could not complain. This, at least, is clearly to be inferred from the language of the authority which has been cited, and appears entirely reasonable and proper. If an adventurer without means purchases goods, no inquiries and no representations being made, there may be no actual fraud in the transaction, but unless his condition was fairly and frankly stated to the vendor, so as to show that the sale was made with a waiver, expressed or implied, as to the inability to pay, he can not properly object to a stoppage *in transitu*. In such a case, the pretense that, there having been no means on which to predicate a failure, except those expected from the purchase, there have been no

29

overt acts of insolvency, should not be allowed to prevail. Fair dealing will be better insured by leaving to the vendor his privilege of stoppage *in transitu*, in all cases of insolvency, whether evidenced by the ordinary accompanying acts, or shown actually to exist. The rights of a fair vendee will be sufficiently protected by giving him an indemnity when the right of stoppage *in transitu* is exercised upon rumor or suspicion without any foundation in fact, and by depriving the vendor, in all cases, of any chance of speculating upon the goods, by requiring them to be delivered or accounted for to the vendee, or his assignees on the payment or tender of the agreed price.

In opposition to these views is the decision of the Supreme Court of Connecticut, in 20 Conn. 53, *Rogers* v. *Thomas*, and this decision appears to have been approved by several recent law writers and annotators. Parson's Mercantile Law, 63; Flander's Shipping, 519; 1 Smith's Leading Cases, Am. Ed. 1855, 903.

It has been decided, in the case of *Rogers* v. *Thomas*, that to authorize the execution of the right of stoppage *in transitu*, there must be some overt act of insolvency, and that it must intervene between the sale and the exercise of the right.

The decision, in the case of *Rogers* v. *Thomas*, does not profess to be founded on any adjudicated cases, but rather on the absence of cases, which it was supposed would exist if such were the law, showing that the right of stoppage *in transitu* might be exercised in cases where the insolvency, though existing in fact, had not been evidenced by some ordinary overt act, or in cases where the insolvency existed at the time of the sale, but unknown to the vendor. And in the absence of such cases, the court decided that they were not included in the general definitions or descriptions found in the authorities of the right of stoppage *in transitu*.

The absence of any decided cases upon any point, though sometimes affording strong negative authority, may be satisfactorily explained from the nature and character of the question, as being one not likely to be presented, or which never had been brought in doubt. It is not reasonable to

suppose that vendors of merchandise would find it to their interest to divert the delivery of goods on their transit to solvent vendees. I have been able to find but one instance of an action by solvent vendees for the improper exercise of the right of stoppage *in transitu,* which is the case of *Wilmshurst* v. *Bowker,* before cited, and yet it could never have been doubted that such an action might be maintained. On the contrary, it might be claimed that the absence of any case of such an action by an insolvent vendee, would show that one could not be maintained. No such case may have been brought, for the reason that it was supposed it could not be sustained.

As to the conclusion drawn from the definitions of the right of stoppage *in transitu* found in the authorities, I think it has already been shown that the exposition of the law on the subject, at least in one of the most respectable authorities, is inconsistent with the conclusion of the Supreme Court of Connecticut. And I do not think that decision can be sustained in view of the origin and nature of the doctrine of stoppage *in transitu.*

The doctrine of stoppage *in transitu* appears to have been derived from, or to be analogous to, the *revendication* of the civil law. This has been thus defined : " Revendication is the right of an unpaid vendor, upon the insolvency of the vendee, to reclaim in specie such part of the goods as remains in the hands of the vendee entire and without having changed its quality;" *In re* Westzythius, 2 Nev. & Man. 650, note *c.* In Bells' Commentaries on the Law of Scotland, book 2, pt. 2, ch. 1, art. 3, §1, cited in the same case, it is said : " The privilege to stop goods *in transitu,* is a qualified extension in equity of that rule of mutual contract, by which either may withhold performance on the other becoming unable to perform his part." It is generally stated in the authorities, as a rule introduced into the common law, in modern times, founded on principles of equity and borrowed from the foreign or continental law, that in case of the vendee's bankruptcy or insolvency, the vendor might stop and take back the goods *in transitu,* or before they came into the hands of the vendee;

Bell's Com. cited 2 Nev. & Man. 651 ; 3 D. & E. 467, *Ellis* v. *Hunt;* 7 Id. 436, *Hodgson* v. *Loy ;* 1 East, 524, *Inglis* v. *Usherwood;* 3 Id. 381, *Bohtlingk* v. *Inglis, et al.;* 15 Ves. 343, *Mackreth* v. *Symmons;* 56 Eng. Com. Law, 864, *Valpy* v. *Gibson;* 71 Id. 949, *Valpy* v. *Oakeley.* It will appear, from these authorities, that the limitation to the right of *revendication,* in view of those who have commented on the subject, is that which evidently restricts the right of stoppage to the period while the goods are *in transitu.* Hence the remedy, among the few in commercial transactions, which parties may themselves adopt. But the authorities cited which show the foundation of the right, also show that it has no connection either with the law of insolvency, or the mode in which the insolvency is to be made apparent.

If the true principle of the right of stoppage *in transitu,* be found in that certainly just rule of mutual contract, by which either party may withhold performance on the other becoming unable to perform on his part—if the foundation of the right be a just lien on the goods for the price until delivered, an equitable lien adopted for the purposes of substantial justice—I do not think there can be any doubt that as to the period of ability to perform, we should look to the time of performance. And if the inability then exists, it can make no difference in justice or good sense, whether it was produced by causes, or shown by acts, at a period before or after the contract of sale. Substantially, to the vendor who is about to complete the delivery and abandon or lose his proprietary lien, the question is, can the vendee perform the contract on his part? has he from insolvency become unable to pay the price ? If such be his condition, and the vendor has not precluded himself by some act of waiver, in my opinion, the general principles on the subject, and justice require that he should be allowed to exercise the right of stoppage *in transitu.* There is no authority which binds me to decide the contrary, and there are cases, which are quite analogous to the present, by which my conclusion is sustained; 14 Pa. St. 51, *Hays* v. *Mouille;* 7 Mass. 453, *Stubbs* v. *Lund.*

There are some grounds upon which the present case might be distinguished from that decided by the Supreme Court of Connecticut. It might be said that before the actual stoppage, by the seizure of the goods under the plaintiff's writ of replevin, the acts of the vendee in allowing, after notice, the attachment to stand, and a judgment to be rendered on the claim, were acts of insolvency, and that this occurred after the sale. But I do not care to make, or to recognize the necessity of any such distinction. I am able to find in this case that the plaintiff was an unpaid vendor, that before the goods were actually delivered he stopped them *in transitu*, upon reasonable grounds, showing the insolvency of the vendee, that this insolvency, a then existing and still continuing fact, has not been disputed by the vendee, and there has been no offer to pay for the goods, or comply with the terms as to credit. I think such a vendee can not complain, and I have no hesitation in saying that the attaching creditor, under the particular circumstances of this case, stands in no better position.

I shall therefore find the issue for the plaintiff, with nominal damages for the detention of the goods.

Judgment for plaintiff.